The undersigned have reviewed the award based upon the record of the proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence as a whole, the undersigned reach the same facts and conclusions as those reached by the deputy commissioner, with some modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusion of law, and ultimate order.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties at the initial hearing as
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. The employee-employer relationship existed between plaintiff and defendant-employer at all relevant times.
3. Employers Mutual Casualty Company (EMASCO) was the workers' compensation carrier for the employer at all relevant times.
4. Plaintiff's average weekly wage may be calculated from a Form 22, which was submitted post-hearing by defendant. [Based upon the Form 22, plaintiff had an average weekly wage of $301.03 and a weekly compensation rate of $200.70.]
***********
Based upon the competent, credible, and convincing evidence of record, the undersigned make the following additional
 FINDINGS OF FACT
1. Plaintiff is a female who was born on August 7, 1950. She worked for the defendant-employer as a manager for their Robbinsville convenience store from June of 1987 until March 3, 1995.
2. Plaintiff's duties as store manager encompassed running the store and included working as shift leader, restocking the store, ordering items for the store, operating the cash register, keeping the store neat and clean, and supervising other employees. In operating the cash register, plaintiff would use one hand to punch in the numbers on the cash register and would use the other hand to make change. Plaintiff is right-hand dominant. Due to the location of the register, she usually punched numbers with her left hand and made change with her right hand.
3. Plaintiff remarried in June of 1992. She left her employment with Duncan Oil Company in March of 1995, because she and her husband decided to relocate to Tennessee.
4. Around December 28, 1990, plaintiff had sustained an injury to her right shoulder while at work when she was lifting a case of motor oil. After this incident, plaintiff experienced pain in her neck, with some radiation into her right upper extremity. She continued to complain of pain in her upper extremity for the years following this injury. This particular injury has not been credibly or convincingly established as being causally related to plaintiff's subsequent development of carpal tunnel syndrome.
5. The medical evidence fails to credibly or convincingly support the assertion that plaintiff experienced pain in her hands as early as June 1994. The only complaints plaintiff made throughout 1994 and 1995 concerned pain in her thumb and neck and shoulder area, and there is a lack of medical documentation to sufficiently show that plaintiff experienced general hand pain or numbness during that earlier period of time.
6. Medical records from Dr. Gary Roper, plaintiff's physician at Andrews Internal Medicine from September and November, 1994, make no mention of any hand pain or numbness. The notes from November 19, 1994, do mention "paresthesia-bilateral lower extremities," which had resolved.
7. After leaving her employment with Duncan Oil Company, and moving to Tennessee, plaintiff sought further assessment by Dr. Kimberly Eakle-Gerald on March 31, 1995. At that time, plaintiff's primary complaint was thumb pain and decreased hearing for several weeks. There is no mention of tingling or paresthesia in her hands, and only slight swelling above the wrist. Dr. Eakle-Gerald assessed plaintiff with tendinitis of the right thumb.
8. Plaintiff saw Dr. Eakle-Gerald again on April 21, June 9, November 3 and 10, 1995. The only mention of hand pain is on April 21, 1995, when Dr. Eakle-Gerald's Assessment remained right thumb tendinitis.
9. On May 4, 1995, plaintiff was seen by Dr. Ronald Neimkin at Carolina Hand Surgery Associates. She reported that she had soreness in both hands in March 1995, after painting a deck. About five days later, she began experiencing pain in the MP joint of her right thumb. Tinel's and Phalen's test were normal, and a thumb x-ray was normal. Dr. Neimkin suspected a fibromyalgia syndrome, and he referred plaintiff for evaluation by a rheumatologist, Dr. Jill Vargo, in Asheville. There are no records in evidence from Dr. Vargo.
10. On November 21, 1995, plaintiff saw Dr. David Knapp, a rheumatology specialist in Nashville. Plaintiff reported to Dr. Knapp that she was doing some work around the house in the spring when she had excruciating pain at the base of the right thumb, which was not associated with swelling, numbness or tingling. This is consistent with what plaintiff had told Dr. Neimkin back in May of 1995, about the onset of her thumb pain. Plaintiff also complained to Dr. Knapp about pain in her right shoulder, upper back, and neck. There is no mention of general hand pain or paresthia.
11. Plaintiff saw Dr. Stanley Hopp, an orthopaedic surgeon in Nashville, Tennessee, on May 21, 1996. This is the first mention in the medical records of general wrist pain and is accepted by the undersigned as the credible and convincing onset time of such pain. Dr. Hopp examined plaintiff's hands and ordered nerve conduction studies. Although the nerve conduction studies did not meet the strict criteria for nerve damage which would confirm carpal tunnel syndrome, Dr. Hopp assessed mild bilateral carpal tunnel syndrome, with the right worse than the left. He also determined that plaintiff had arthritis in both thumbs.
12. Dr. Hopp performed a carpal tunnel release on plaintiff's right hand on February 5, 1997. Dr. Hopp last saw plaintiff on March 25, 1997. At that time, he found plaintiff had done well post-operatively and was most likely at maximum medical improvement with a six percent permanent impairment to her right hand.
13. Plaintiff has mild carpal tunnel syndrome in her left hand. While plaintiff could elect to pursue a surgical release on that hand, she has not to date. Without surgery Dr. Hopp has found that plaintiff retains a five percent permanent impairment to her left hand.
14. Plaintiff has also been examined by Dr. Narasimha Reddy, an orthopaedic specialist. Dr. Reddy saw plaintiff on November 20, 1995. It is Dr. Reddy's opinion that plaintiff has carpal tunnel syndrome.
15. Although both physicians felt that plaintiff's employment probably contributed to her development of carpal tunnel syndrome, the greater weight of the competent, credible, and convincing medical evidence, coupled with the lay testimony, fails to support such a finding. While plaintiff's duties included operation of the cash register, she also had many other duties. The evidence fails to credibly or convincingly show that plaintiff was constantly keying sales and making change, such that the motion required was continuously repetitious.
16. The evidence fails to show credibly or convincingly a temporal relationship between plaintiff's complaints of hand pain and her employment. Plaintiff had left her employment with defendant-employer more than fourteen months before she complained of the symptoms of carpal tunnel syndrome. Her prior complaints, to the contrary, always focused on her right thumb and her right neck and shoulder area.
***********
Based upon the foregoing stipulations and findings of fact, the undersigned enter the following
 CONCLUSION OF LAW
1. Plaintiff has failed to prove by the greater weight of the competent, credible, or convincing evidence that she has sustained an occupational disease, i.e. bilateral carpal tunnel syndrome, which is due to causes and conditions peculiar to her employment with the defendant-employer, N.C. Gen. Stat. §97-53(13).
***********
Based upon the foregoing stipulations, findings of fact and conclusion of law, the undersigned enter the following
 ORDER
1. Under the law plaintiff's claim must be and is HEREBY DENIED.
2. Each side shall pay their own costs, except that defendants are responsible for the expert witness fees previously approved.
This case or ORDERED REMOVED from the Full Commission hearing docket.
This the ___ day of _________, 1999.
S/_____________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING WITHOUT A WRITTEN DISSENT:
S/_____________ THOMAS J. BOLCH COMMISSIONER
JHB:kws